**STATE of Missouri, Respondent,**

v.

**Melvin Dew RENFRO, Appellant.**

**No. 52129.**

Supreme Court of Missouri,
Division No. 2.

Nov. 14, 1966.

**58**

Norman H. Anderson, Atty. Gen., Jefferson City, J. L. Anding, Sp. Asst. Atty. Gen., Pacific, for respondent.

J. Whitfield Moody, J. Arnot Hill, Kansas City, for appellant.

DONNELLY, Judge.

Appellant, Melvin Dew Renfro, was convicted of murder in the second degree under § 559.020 RSMo 1959, V.A.M.S., by a jury in the Circuit Court of Jackson County, Missouri, and his punishment was assessed at imprisonment in the custody of the State Department of Corrections for a term of thirty-five years. Following rendition of judgment and imposition of sentence an appeal was perfected to this Court. Appellant has been represented in the trial court, and in this Court, by court-appointed counsel.

Appellant does not question the sufficiency of the evidence. On March 15, 1965, appellant and Barbara Mae Warrene had some beers together in a tavern in Kansas City, Missouri. Appellant had a pistol in his possession at the time. Appellant excused himself for a few minutes. While he was absent, Barbara Mae Warrene left the tavern and went to her apartment at 3727 East 9th Street, Kansas City, Missouri. Appellant went to the apartment, an argument followed, and appellant shot and killed Barbara Mae Warrene. Three witnesses testified that appellant threatened the life of Barbara Mae prior to the fatal shooting. Appellant denied this and contended the killing was accidental.

Appellant asserts that the trial court erred in permitting the assistant prosecuting attorney to "cross-examine and impeach his own witness."

Gail Harvey was called as a witness for the State. On redirect examination she testified as follows:

"Q Did you ever hear Renfro up there in that very apartment on one of these occasions that Mr. Hill was talking about make any threats to Barbara Warrene?

"A You mean did he—

"Q Did he ever say anything on any prior occasion when Janet was there that was threatening to Barbara Warrene?

"A Yes one night he did, yes.

"Q What did he say? A Well, he said he was going to kill her because she wasn't doing him right.

"Q That was a completely different night, an earlier night, was it not? A Yes."

On recross examination, she testified as follows:

"Q Are you sure he didn't say someone ought to kill her?

"A I am not sure.

"Q As a matter of fact, you are not sure that he said he would kill her?

"A No. It was conversation. Like I said, he was depressed."

The assistant prosecuting attorney then re-examined the witness and asked three obviously leading questions. These questions were not answered by the witness because of objections made. Then the following occurred:

"(STATE'S EXHIBIT NO. 12 WAS MARKED FOR IDENTIFICATION.)

"Q Mrs. Harvey, did you give a statement to the Kansas City, Missouri, Police Department on March 15 of this year at about 8:55 or about 9:00 o'clock in the evening? A Yes.

"Q I hand you what has been marked Exhibit 12 and ask you if that is your signature?

"A Yes, I did, I know what you mean now.

"Q Would you read over that statement and tell me if that is a copy of the statement you gave the police. Is that the statement you gave the police? A Yes, sir.

"Q Now, if you will use that statement, if you wish, to refresh your recollection, I would like to ask you if at any prior time, any time before March 15 when Mrs. Warrene was killed, in the presence of Janet, her thirteen-year-old daughter, you ever heard this man threaten Barbara Warrene? A Yes.

"Q What is your answer, ma'am? A Yes.

"Q While he was threatening her, did he have anything with him that he was using along with the threat? A A pocket knife.

"Q Pardon? A A pocket knife.

"Q A pocket knife? A Yes.

"Q What did he do with the pocket knife?

"A He took it out of his pocket, but the fellow with him grabbed the knife.

"Q What did he say when he had the knife out of his pocket?

"A 'How would you like to die?'

"Q Who was he talking to? A Mrs. Warrene.

"Q Mrs. Barbara Warrene? A Yes."

■ Upon a full review of Gail Harvey's testimony, we do not believe she was a "hostile" witness, nor may we "infer from the testimony and conduct of the witness an effort to suppress the truth."

Cf. State v. Davis, Mo.Sup., 400 S.W.2d 141, 147. Counsel for appellant in his argument to the jury, characterized her as a "pliable witness," a "person who liked to please the person who is asking her questions." We agree. Appellant cites State v. Bowen, 263 Mo. 279, 172 S.W. 367 and State v. Kinne, Mo.Sup., 372 S.W.2d 62, for the proposition that a party may not impeach his own witness unless the witness has become hostile or adverse. However, appellant fails to note the case of State v. Patton, 255 Mo. 245, 164 S.W. 223, cited in the Bowen case and in the Kinne case as not applicable on the facts in those cases. The Patton case held that where an effort is made to *refresh the memory* of a forgetful or unwilling witness, it is not improper to exhibit a former written statement of the witness to her for examination. We are of the opinion that this rule of law is applicable here. The former statement, Exhibit No. 12, was not offered in evidence. It did refresh the recollection of Gail Harvey and she proceeded to testify as set out above. It was not read to the jury. On this record we cannot convict the trial court of an abuse of discretion. Appellant's assignment of error is without merit.

Appellant asserts that the trial court erred in failing to discharge the jury and declare a mistrial during the closing argument on the part of the State when the assistant prosecuting attorney "told the jury in substance that if they acquitted the defendant he would probably go out and kill someone else."

In the closing argument by Mr. Hardy, the assistant prosecuting attorney, the following occurred: "You might consider this, however. He might well do it again, if you believe he did it this time. He might well again, since he apparently enjoys going with younger women, which I think is fine, start going with another one who runs around on him—

"MR. HILL: If it please the Court, I object to this as being improper argument.

"THE COURT: Confine your argument to the evidence and the inference, Mr. Hardy."

The record shows that the trial court instructed the assistant prosecuting attorney to confine his argument to the evidence and the inferences to be drawn therefrom. No further action was requested by able defense counsel. Appellant cannot be heard to assert error in the failure of the trial court to act further. State v. Havens, Mo.Sup., 177 S.W.2d 625; State v. Armstead, Mo.Sup., 283 S.W.2d 577. In any event, we do not believe the argument complained of was prejudicially erroneous. Appellant cites State v. Mobley, Mo.Sup., 369 S.W.2d 576; State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524; and State v. Groves, Mo.Sup., 295 S.W.2d 169 to sustain his contention. In the Mobley case, the argument was held prejudicially erroneous, the opinion noting, however, "almost complete lack of action by the trial court." In the Groves case, the trial court refused any relief to defendant on his objection. In State v. Tiedt, the Court stated (357 Mo. 115, 122, 206 S.W.2d 524, 528):

"Consequently, we are not concerned with an instance of a single breach arising more or less spontaneously under the stress and excitement of contest. If such were the case, the court's first ruling would doubtless have served to divert the speaker, and to counteract the prejudice. But repeated and persistent indulgences of the character here involved, in flagrant disregard of the court's rulings, dispel any idea of inadvertence, and present the question of the cumulative effect of such improprieties, coupled with an erroneous ruling of approval. * * *."

Each case must be judged on its particular facts. We have here "an instance of a single breach" where the trial court's ruling "served to divert the speaker," and to counteract any prejudice which may have resulted from the argument. Appellant's assignment of error is without merit.

An examination of the record as required by Supreme Court Rule 28.02, V.A.M.R., discloses no error. The judgment is affirmed.

All of the Judges concur.