Robert Eugene McGLATHERY, Appellant,

v.

STATE of Missouri, Respondent.

No. 53461.

Supreme Court of Missouri,
Division No. 1.

Jan. 13, 1969.

Robert G. Duncan, Pierce, Duncan, Beitling & Shute, Kansas City, for appellant.

Norman H. Anderson, Atty. Gen., Gary G. Sprick, Asst. Atty. Gen., Jefferson City, for respondent.

SEILER, Judge.

Defendant appeals from the overruling by the trial court of his motion to vacate judgment and sentence under Rule 27.26, V.A.M.R. The motion was filed September 22, 1967. The judgment in question was a sentence of ten years for burglary in the second degree. It was affirmed on direct appeal in State v. McGlathery (Mo. Sup.) 412 S.W.2d 445. Defendant made various claims in his motion to vacate. Those which are carried forward to this point by being briefed here by appointed counsel are two: first, that the prosecuting attorney knowingly and deliberately suppressed exculpatory evidence, and, second, that the prosecutor in closing argument expressed his private opinion as to the guilt of the accused to the point where defendant was denied a fair trial.

On the first point, it will be seen from the opinion in 412 S.W.2d 445, supra, that a vital part of the state's case connecting defendant with the burglary of the grocery store was the matching of defendant's shoes with footprints found in the mud at the rear of the store. Defendant's present contention is that at the preliminary hearing, which was not reported, Sgt. Closson of the state highway patrol, brought into court a footprint or a cast of a footprint on a board as an exhibit and testified that ·the footprint·· matched the shoes of one Jim Foster, whereas at the trial, Sgt. Closson did not produce any such exhibit in evidence, saying that it had dried out and was of no value anymore, but went on to testify that he had matched defendant's shoes with the footprints at the scene of the crime as well as with the footprints which the sergeant had removed from the ground, and defendant's shoes matched the footprints exactly. The above mentioned Jim Foster was one of the men in the automobile with defendant when the car was stopped by the patrol about 20 or 30 minutes after the burglar alarm sounded. Defendant was wearing Nunn-Bush shoes. Foster, according to defendant, was wearing pointed toe shoes, somewhat like a boot, with higher than ordinary heels. Defendant testified at the evidentiary hearing on the 27.26 motion and so did his former wife, who said, in addition, that she did not recall any testimony at the preliminary that defendant's shoes matched the footprint brought in by Sgt. Closson. Defendant also offered in evidence at the motion to vacate an excerpt from the transcript at the original trial, where the night watchman testified that the sheriff had made plaster casts of the footprints, although no such plaster casts appeared at the trial. Defendant also testified he did not participate in the burglary.

On the other side, Sgt. Closson testified at the 27.26 hearing. He denied that any plaster casts were made. He also denied bringing any board, footprint on a board, or footprint into court at the preliminary hearing. He again explained that the footprint was dug out of the ground, put on a

 

board, kept by the sheriff in the latter's office, without any sort of preservative being applied, and that in time it dried out and cracked. Closson did not recall any testimony at the preliminary that there was a track that fit the shoe of Jim Foster, the other man who was arrested with defendant, although he said there could have been.

█ On the foregoing point, the trial court at the conclusion of the 27.26 hearing reviewed the testimony of the witnesses in the original trial as shown by the transcript, pointed out that it was true one witness there said he thought a plaster cast was made, but that Sgt. Closson had testified almost exactly the same at the original trial as he did at the hearing on the 27.26 motion. The trial court concluded it was " * * * just a matter of one man saying that he thought a plaster cast was made and another man saying that he didn't make any * * * "; that there was no evidence that the prosecuting attorney had a plaster or any other kind of cast or that a cast was suppressed and not submitted to the jury. We see, therefore, that the trial court has resolved this disputed issue of fact as to there being a cast and as to whether the footprint which Sgt. Closson removed matched the shoe of defendant, against defendant's contentions. We cannot say on the record before us that we are left with a definite and firm conviction that a mistake has been committed and that the findings, conclusions and judgment of the trial court are clearly erroneous, Rule 27.26(j), Crosswhite v. State (Mo.Sup.) 426 S.W.2d 67, 70–71.

█ On the second point, relating to the arguments of the prosecutor, the arguments in question do not support defendant's claim that they are declarations by the prosecutor of his personal belief in defendant's guilt. It is true that the prosecutor several times started a sentence with, or worked into the middle of a phrase, the words, "I think" and then stated what his conclusions were from the facts pointed out, but in so speaking the prosecutor was merely introducing what he was saying, not expressing a private belief or intimating he had information beyond that shown in evidence. We agree with the trial court's finding that these remarks did not violate any constitutional rights of defendant.

Judgment affirmed.

All of the Judges concur.