STATE of Missouri,
Plaintiff-Respondent,

v.

Calvin R. THORNTON,
Defendant-Appellant.

No. WD33387.

Missouri Court of Appeals,
Western District.

March 15, 1983.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and Denied
May 3, 1983.

James W. Fletcher, Public Defender, Kansas City, Gary L. Gardner, Asst. Public Defender, Michael D. Rudloff, Certified Law Student, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, William K. Haas, Asst. Atty. Gen., for plaintiff-respondent.

Before SHANGLER, P.J., and PRITCHARD and DIXON, JJ.

DIXON, Judge.

Defendant was convicted by a jury of second degree burglary, a class C felony. § 569.170 RSMo 1978. Defendant maintains on appeal that his sentence could not have been extended under the persistent offender statutes and that the trial court erred in ordering defendant to submit to a second fingerprinting the morning of the day of trial.

Defendant was found guilty by a jury of the second degree burglary of a beauty shop. Police arrested defendant inside the shop. He testified that he entered the shop through a window in the back of the building. Defendant does not challenge the sufficiency of the evidence to support the jury's verdict. The jury assessed punishment at two years, which the court extended an additional year on its finding that defendant was a persistent offender.

The contention that defendant's sentence could not have been extended under the persistent offender statutes must be prefaced by recognition of that point's posture on this appeal. Defendant's attorney made no objection at the sentencing hearing that would even foreshadow the ingenious argument raised in defendant's appellate brief. Nor does it appear in defendant's motion for new trial. The defendant asserts that it is plain error. The Attorney General's brief is of no help on either the issue of the availability of plain error review, nor on the substantive issue presented. The state's brief does not even mention, let alone discuss, the authorities cited by the defendant's brief. Since the defendant's argument attacks the validity of the sentence and raises a novel issue with respect to the trial court's power to enhance the sentence, the matter will be reviewed upon defendant's request for plain error review. Rule 29.12(b).

Trial was held on September 9–10, 1981. At that time §§ 557.036, 558.016, and § 558.021 RSMo 1978 were in effect. Trial was conducted and defendant was sentenced in accordance with the statutes in effect at time of trial. By the time the sentencing hearing was held on November 5, 1981, all three statutes had been amended. 1981 Mo.Laws 636–37. The amended statutes change the procedure under which an extended sentence can be imposed on a persistent offender. If a jury trial is requested, the state must plead and establish and the judge must find that the defendant is a persistent offender *before* the case is submitted to the jury. § 558.021.2 RSMo Cum.Supp.1981. Under § 558.021.1(2) RSMo 1978, the prior statute, the comparable sentencing hearing was held *after* the finding or plea of guilty. Pursuant to the amended law, § 557.036.5 RSMo Cum.Supp. 1981, the jury plays no role, not even an advisory one, in passing sentence on an

adjudged persistent offender. Under the law in effect at the time the defendant's trial commenced, § 557.036 RSMo 1978, now repealed, the jury assessed punishment subject to the court's authority to increase the sentence in accordance with § 558.016 RSMo 1978, now repealed.

Defendant argues that the trial court was required to sentence him under the statutes in effect at the time of his sentencing hearing rather than those in effect at the time of his trial. He contends that § 1.160 RSMo 1978 compels this conclusion. Section 1.160 provides generally that repeal or amendment of a penal law has no effect on pending or commenced prosecutions except that "all such proceedings" are to be conducted according to "existing laws." Since amended § 558.021 is a procedural statute, the argument runs, the court was required to conduct the sentencing hearing in accordance with it. Because it would have been impossible for the trial judge to make the persistent offender determination before trial, as no statute existed that would have empowered the court to do so, and because the statute under which defendant's sentence was extended had been repealed by the time the sentencing hearing was held, defendant argues that the court lacked authority to tack the additional year onto the jury's sentence.

The defendant contends that *State ex rel. Peach v. Bloom,* 576 S.W.2d 744 (Mo. banc 1979), supports his argument. There the defendant had committed the crime for which he was tried before the effective date of the "new" criminal code, but trial was held after that date. Defendant argued that he could not be tried under the "old" Second Offender Act due to the dictate of § 1.160. The court agreed that the procedural Second Offender Act would not control a case *tried* after that Act had been superceded, absent the legislature's specific provision for such a case in § 556.031 RSMo 1978. *Id.* at 746. The *Peach* court answered the defendant's contention by asserting that § 556.031 expressly overrides § 1.160 and provides that offenses committed prior to the effective date of the code are to be construed and punished according to pre-

code law. The defendant also cites earlier cases which held that repealed sentencing procedures were not to be utilized when "trial" occurred after the repeal but the offense predated the repeal. *State v. Morton,* 338 S.W.2d 858 (Mo.1960), and *State v. Griffin,* 339 S.W.2d 803 (Mo.1960). These cited cases do not reach the issue in the instant case where the trial is commenced prior to the effective date of the repeal but is not concluded until after the repeal is effective.

Thus, the nub of defendant's argument is that § 1.160 RSMo 1978, the "savings clause," does not preserve the provisions of § 558.021.1(2) RSMo 1978 providing for the sentencing hearing after trial.

The defendant's argument, however ingenious, overlooks the basic legislative purpose in the enactment of § 1.160 RSMo 1978. The purpose of the statute was to permit the prosecution and punishment of offenses which occurred during the life of a penal statute but were not prosecuted until after the repeal of the statute. *In Ex Parte Wilson,* 330 Mo. 230, 48 S.W.2d 919 (banc 1932), an early decision under predecessor savings clause statutes (§§ 661, 662, and 4468 RSMo 1929), a defendant was jury convicted and sentenced in January 1931 for a violation involving the acceptance of a deposit in a bank while the bank was insolvent. For a variety of reasons judgment on the jury-imposed sentence of three years was delayed until November 1931. During the interim the statute upon which the charge was predicated was repealed. The defendant argued that since not only the offense but the punishment portion of the statute had been repealed, the legislature had "reduced" the punishment to no punishment. The defendant argued that the provision of § 4468 RSMo 1929, which accorded defendant the benefit of a statutory reduction in sentence, denied the trial court jurisdiction to impose a sentence of any kind. The judgment of conviction for three years in accord with the jury verdict was affirmed. The rationale of the court in *Wilson* was that application of the savings statutes as suggested by defendant would ne-

gate the essential legislative purpose of preserving the power of the state to prosecute offenses occurring prior to the repeal of a statute.

The underlying rationale of the statute is that all defendants are to be treated alike and their guilt or innocence is to be dealt with in the same fashion whether they are tried before or after repeal of the statute. Nonetheless, an exception is recognized where the repeal reduces the punishment. In those instances, a trial after the legislative reduction in sentence allows defendants the benefit of the reduced sentence. *See* § 1.160(2) RSMo 1978.

The statute also makes exception for the situation where the procedure in affixing the punishment has been changed. Reasoning from the language of § 1.160(1) RSMo 1978, the courts have utilized the new procedures in trials *commenced* after the effective date of the new procedure.

■ Despite these settled rules, the vexing problem of the instant case remains unsolved. When, as in the instant case, the trial straddles the repeal date of procedures involved in the entire trial, can those repealed procedures be given effect after the date of repeal?

The answer would be much easier but for revision of the savings statutes. In prior versions of the savings statutes, §§ 1.160, 1.170, and 1.180 RSMo 1978, all three sections referred to both criminal and civil cases. The Session Laws of 1957 amended § 1.180 RSMo 1978 by omitting reference to criminal cases. 1957 Mo.Laws 592. The Revisor's note says that this was done because § 1.180 was duplicative of § 1.160. *See* § 1.180 VAMS 1969 (Revisor's Note). The importance of this is that in § 1.180 the application of procedural laws is stated as follows: "[A]ll proceedings had after the repeal becomes effective are governed by procedural rules and laws then in effect, insofar as they are applicable." Section 1.160, on the other hand, says: ". . . except (1) that all such proceedings shall be conducted according to existing laws; . . . ." The language of § 1.180 is broader in requiring conformity to existing procedures

only "insofar as applicable." If that language still applied to criminal cases, the dilemma of the instant case would be easily resolved. It would be manifestly impractical to apply the procedures of present § 558.021.2 RSMo Cum.Supp.1981 to the situation where the jury had already considered and passed upon the punishment. There was no practical way for the trial court to apply the amended procedures to the instant case so the new procedures could not apply to defendant's sentencing. The defendant, under the prior law, was entitled to have the jury assess his punishment and for the judge at sentencing to determine enhancement, if any. The defendant might have had legitimate complaint if the court had applied a statute which, although legislatively approved and signed by the governor, was still not effective and thus denied him his right to jury-imposed sentence. Nor could the trial court apply the new statute at sentencing for by that time he could not, as the statute directs, remove the issue of sentencing from the jury, they having already passed upon the question.

The omission of the applicability language from § 1.160 does not preclude a finding that the statute should be so construed. The legislative history and the Revisor's note indicate that the legislature believed that the scope of § 1.160 and § 1.180 were the same. A statute should be construed to avoid an absurd result. "We presume the legislature did not intend to enact an absurd law, . . ., and in construing the Act 'We look to the circumstances and usages of the time; we seek to promote the purposes and objects of the statute and to avoid any strained and absurd meaning.'" (cites omitted). *State ex rel. Safety Ambulance Service, Inc. v. Kinder,* 557 S.W.2d 242, 247 (Mo. banc 1977). Also, construction to give effect to the statute's basic purpose is a prime rule of statutory construction. In ascertaining legislative intent the court puts upon the language an interpretation that promotes its object and the " ' "manifest purpose of the statute, considered historically" . . .' [cite omitted]." *State v.*

*Wright,* 515 S.W.2d 421, 427 (Mo. banc 1974).

■ To assert that in the very limited number of cases in which trial commenced before the repeal date and sentencing occurred after repeal no enhancement could occur is patently absurd. To create such a special class of defendants whose punishment differs because of the peculiar circumstances would thwart the overall purpose of the savings statutes.

It is to be noted that defendants, whether tried under § 558.021 RSMo 1978 or § 558.-021 RSMo Cum.Supp.1981, are subject to enhancement of sentence if determined to be persistent offenders. The only difference is the method of final determination of sentence. The defendant here seeks to place himself in a special category of no enhancement, which would be contrary to both statutes. Nor is this a case where the principle of a legislatively mandated reduction in sentence has occurred. The enhancement of sentence is permitted under both statutes; the only difference is the role of the jury in the sentencing process. The defendant does not complain of the jury sentence—he asserts only that the enhancement was error. Because the overriding purpose of both of the statutes is to provide for enhancement and since the only practical application of the change in the procedure was the alternative chosen by the trial court, the defendant's claim of plain error is denied.

■ The defendant further complains that the state failed to prove that defendant's prior felonies were committed at different times, and not just that the convictions were entered on different dates. Defendant's attorney questioned defendant on the record before trial commenced as to his understanding that the judge could increase his sentence under the persistent offender statute. Defendant acknowledged that he had been convicted of two prior felonies, one in 1978 and one in 1979. Where the inference is clear from the dates of conviction that the prior felonies were committed at different times, the defendant is required to come forward with evidence that they were, in fact, committed at the same time despite the disparity in sentencing dates, *State v. Leake,* 608 S.W.2d 564 (Mo. App.1980), which defendant failed to do.

■ Defendant's next argument is a variation on the theme that because the criminal instructions informed the jury that they would impose sentence, when in fact that sentence was increased under the persistent offender statute, defendant was denied his right to trial by jury. Defendant claims that imposition of the extended one-year term denied him the legitimate and substantial liberty interest created by § 557.-036.2 RSMo 1978 (now repealed) that his sentence was to be finally determined by the jury. This contention was not preserved by objection or in defendant's motion for new trial. The deprivation of a liberty interest is a procedural due process problem. Defendant's jury trial clearly afforded him the opportunity to present his objections to the instructions, as did the motion for new trial. Defendant was not deprived of liberty through any deficiency in procedure. The proposition that the misleading nature of the instructions themselves renders them constitutionally deficient has already been decided against defendant. *State v. Hunter,* 586 S.W.2d 345 (Mo. banc 1979).

■ The final point raised on appeal concerns the adequacy of the state's showing of good cause under Rule 25.06(B)(3) to require defendant to submit to a second fingerprinting the morning of trial. Rather than call the person who fingerprinted defendant the night of his arrest to identify those prints, the state moved to require defendant to submit to a second fingerprinting, which was to be administered by the state's fingerprint expert witness. As that witness was present in court to testify, his taking of a second set of prints saved the state the necessity of calling the person who took the original prints to identify them. The trial court sustained the state's motion over defendant's objection. The objection was repeated in defendant's motion for new trial, but defendant did not object

to admission of the second set of prints during trial. Failure to "keep the issue alive" during trial does not preserve the issue for review. *State v. Mays,* 598 S.W.2d 613 (Mo.App.1980). Identity was not disputed at trial. No manifest injustice resulted from the order requiring defendant to submit to the second fingerprinting. Rule 29.12(b).

The judgment and sentence are affirmed.

All concur.